UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BLAKE CHAPMAN, et al. | § | |
|     Plaintiffs | § | |
| | § | CIVIL ACTION NO. |
| | § | 2:17-cv-174; |
| | § | C/W 2:19-cv-32 and  2:19-cv-34 |
| | § | |
| Vs. | § | |
| | § | |
| voestalpine Texas Holding, LLC, *et al.* | § | |
|     Defendants | § | |

---

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

---

**TO THE HONORABLE NELVA GONZALES RAMOS:**

Plaintiffs—Blake Chapman, Ricky Stephens, Gary Thurmond Jr. and Carolyn Thurmond;

Hortensia Martinez; Charles Garrett, and Roel Garcia individually and on behalf of all others similarly

situated ("Representative Plaintiffs" or "Plaintiffs")—respectfully move this Court to certify the

proposed Rule 23 Class identified herein for the purpose of settlement, determine that the Class

Settlement and Release Agreement ("Agreement") between the Plaintiffs and Defendants voestalpine

Texas, LLC, voestalpine Texas Holding, LLC, and voestalpine US Holding, LLC ("Defendants")

(collectively, the "Parties"), is fair and reasonable, and approve the Agreement between the Parties. Defendants do not oppose this Motion.

This Motion is based on the Declarations of Austin Anderson and Stuart White as Class Counsel, the associated exhibits, and the entire record of the Consolidated Action(s).

Date: May 25, 2022

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:*/s/ Clif Alexander*
    **Clif Alexander**
    Federal I.D. No. 1138436
    Texas Bar No. 24064805
    clif@a2xlaw.com
    **Austin W. Anderson**
    Federal I.D. No. 777114
    Texas Bar No. 24045189
    austin@a2xlaw.com
    **Lauren E. Braddy**
    Federal I.D. No
    Texas Bar No. 24071993
    lauren@a2xlaw.com
    819 N. Upper Broadway
    Corpus Christi, Texas 78401
    Telephone: (361) 452-1279
    Facsimile: (361) 452-1284

**LILES WHITE PLLC**

By:*/s/ Stuart R. White*
    **Stuart R. White**
    Federal I.D. No. 11448833
    Texas Bar No. 24075268
    stuart@lileswhite.com
    **Kevin W. Liles**
    Federal I.D. No. 21501
    Texas Bar No. 00798329
    kevin@lileswhite.com
    500 N. Water Street, Suite 800
    Corpus Christi, Texas 78401
    Telephone: (361) 826-0100
    Facsimile: (361) 826-0101

**FRAZER PLC**

By: */s/ T. Roe Frazer II*
    **T. Roe Frazer II** (Admitted *Pro Hac Vice*)
    Tennessee Bar No. 35785
    roe@frazerlaw.com
    1 Burton Hills Blvd., Suite 215
    Nashville, Tennessee 37215
    Telephone: (615) 647-0990

*Attorneys in Charge for Plaintiffs and the Class Members*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... v

I.  Introduction ................................................................................................................ 1

II.  Summary of Settlement Actions ................................................................................ 3

    A.  Notice Distribution to Class Members ............................................................... 3

    B.  Class Member Response to Notice of Class Action Settlement ......................... 7

    C.  Settlement Distribution ...................................................................................... 8

    D.  Service Awards ................................................................................................... 10

    E.   Attorneys' Fees ................................................................................................. 11

III.  Legal Analysis Supporting Final Approval ............................................................ 11

    A.  The Settlement Is Fair, Reasonable, and Adequate ......................................... 11

        1.  Whether the Settlement Was a Product of Fraud or Collusion ................. 12

        2.  The Complexity, Expense, and Likely Duration of the Litigation ............. 14

        3.  The Stage of the Proceeding and the Amount of Discovery Completed ...... 16

        4.  The Probability of Success on the Merits ................................................. 18

        5.  The Range of Possible Recovery ............................................................... 20

        6.  The Opinions of Class Counsel, Class Representatives, and Absent Class Members Favor Settlement ....................................................................... 22

    B.  The Requested Service Awards are Reasonable ............................................... 23

    C.  Class Certification is Appropriate ..................................................................... 25

    D.  The Class Notice Constituted the Best Notice Practicable ............................... 25

    E.  Class Administration Costs are Reasonable .................................................... 28

        1.  Claims Administration Expenses ............................................................. 28

        2.  Special Master Expenses .......................................................................... 29

IV.  Conclusion .............................................................................................................. 31

Index of Exhibits ............................................................................................................. 33

**TABLE OF AUTHORITIES**

**Cases**

*Aruba Petroleum, Inc. v. Parr*, No. 05-14-01285-CV, 2017 WL 462340 (Tex. App. Feb. 1, 2017).......... 18

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004)) ............................................................... 16, 18

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ....................................................................................................................... 20

*Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)...................... 13

*Brannum v. Collier*, 745 F. App'x 544 (5th Cir. 2018) .................................................................. 26

*China Agritech, Inc. v. Resh*, ___ U.S. ___, ___, 138 S.Ct. 1800, 1811 (2018).......................................... 25

*City of Detroit v. Grinnell*, 495 F.2d 448 (2d Cir. 1974)................................................................... 12

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 12-1609, 2015 WL 965693 (W.D. La. Mar. 3, 2015) ........................................................................................................... 22

*Claudet v. Cytec Ret. Plan,* No. CV 17-10027, 2020 WL 3128611 (E.D. La. June 12, 2020) .................. 25

*Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) ............................... 26, 28

*Cook v. Flight Servs. & Sys., Inc.*, No. 2:16-CV-15759, 2019 WL 2462810 (E.D. La. June 13, 2019) .......................................................................................................................... 25

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................... 18, 20, 22

*Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016) .................................... 19

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ...................................................... 13, 22

*Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472 (W.D. Tex. May 23, 2016) ..................................................................................................... 25

FED. R. CIV. PROC. 23 ........................................................................................... 11, 25, 28

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)................................................. 12

*Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019) .................. 20

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) .......... 15

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................... 16

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ....................................... 17

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7–12 Litig.*, 447 F.Supp. 2d 612 (E.D. La. 2006) ................................................................................................. 16, 17

*In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................... 24

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010) ................................................ 26

*In re Lease Oil Antitrust Litig. (No. II),* No. MDL 1206, 2007 WL 4377835 (S.D. Tex. Dec. 12, 2007) ................................................................................................................................ 31

*In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112 (E.D. La. 2013) ..................................... 16, 22

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) ............................................................ 20

*In re Wells Fargo Wage and Hour Employment Prac. Lit.*, 18 F. Supp. 3d 844 (S.D. Tex. May 12, 2014) (Miller, J.) .......................................................................................................... 24

*Kemp v. Unum Life Ins. Co. of Am.*, No. 14-0944, 2015 WL 8526689 (E.D. La. Dec. 11, 2015) ........... 17

*King v. United SA Fed. Credit Union*, 5:09-cv-00937-NSN (W.D. Tex. Oct. 8, 2010) ............................ 24

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................................................... 13

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ...................................................... 13

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) .......................................................... 17, 22

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................................ 12

*Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597 (D. Colo. 1974) .............................................. 21, 22

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) .................................................................. 12

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .......................................... 12, 18, 23

*Ridgely v. F.E.M.A.*, No. 07-2146, 2010 WL 5140833 (E.D. La. Dec. 13, 2010) ................................. 20

*Silva v. Tegrity Pers. Servs.*, Civ. A. No. 4:13-cv-00860, 2013 (S.D. Tex. Dec. 5, 2013) .......................... 24

*Tarlecki v. Bebe Stores, Inc.*, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) .................................... 24

*Turner v. Murphy Oil USA*, 472 F. Supp. 2d 830 (E.D. La. 2007) ........................................ 13, 17, 20, 22

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ....................................... 24

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................... 26

**Rules**

FED. R. CIV. P. 23 ................................................................................................................ Passim

# I.

# INTRODUCTION

On October 15, 2021, Plaintiffs moved this Court for an Order certifying, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). ECF No. 84. On October 28, 2022, this Court granted the motion for preliminary approval (ECF No. 86), as follows:

1.      Finding the class action settlement agreement fell within the range of reasonableness and preliminarily approving the same;

2.      Conditionally certifying, for settlement purposes only, the following Class:

**All Persons who Reside in the Class Area as of the date the Court enters the Preliminary Approval Order, or who formerly Resided within the Class Area for a period of at least one (1) month during the Class Period, and had a legal right to occupy the Residence, through property ownership or residential lease agreement.**

3.      Finding that, for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are satisfied, with the exception of the manageability requirement of Rule 23(b)(3).

4.      Appointing, for settlement purposes only, Blake Chapman, Ricky Stephens, Gary Thurmond, Jr., Carolyn Thurmond, Hortensia Martinez, Charles Garrett, and Roel Garcia as Representative Plaintiffs.

5.     Appointing, for settlement purposes only, ANDERSON ALEXANDER, PLLC, LILES WHITE, PLLC, and FRAZER LAW, PC as Class Counsel.

6.     Appointing Postlethwaite & Netterville ("P&N") as Settlement Administrator.

7.     Appointing Dan Balhoff (including members or representatives of his firm, PERRY, BALHOFF, MENGIS & BURNS, LLC, to whom he may delegate tasks) as Special Master, for the purpose of overseeing the settlement administration and allocating the Net Settlement Amount amongst the Class Members, according to the terms of the Agreement.

8.     Approving, as to form and content, the Notice Plan, and ordering the Claims Administrator to disseminate the Notice Packet to all Residences/Persons identified in the Property Identification Plan.

9.     Determining the Notice documents fairly and adequately described the terms and effect of the Agreement and gave adequate notice of Class Members' right to opt-out of, or object to, the Settlement.

10.    Scheduling the Final Approval Hearing to take place on June 15, 2022, at 1:30 p.m., to confirm the overall fairness of the settlement and to fix the amount of reasonable attorneys' fees and costs to Class Counsel and enhancement payments to the Class Representatives.

The Class Representatives now request that, pursuant to the schedule set by the Court in its October 28, 2021 Order preliminarily approving settlement, and in light of the facts and legal

arguments articulated in this Motion, the Court issue an Order finally certifying the requested settlement class and approving the Settlement Agreement.

## II.
## SUMMARY OF SETTLEMENT ACTIONS

**A.       Notice Distribution to Class Members**

Upon entry of the Court's Preliminary Approval Order, P&N began implementation of the Property Identification Plan outlined in the Settlement Agreement. *See* Exhibit 1 at ¶ 5. P&N engaged a vendor with experience in geospatial data to utilize data publicly available by the San Patricio County Appraisal District to identify all residential properties located within the seven (7) Weighted Class Zones within the Class Area. The data included parcels IDs, property addresses, owner names and owner mailing addresses for the period of 2016 through 2022.  A total of 42,023 records were located through the appraisal records for San Patricio County, Texas (the "Property Database"). For each property record within the Property Database, the Claims Administrator identified all owners and their respective mailing addresses within the Class Period. The Claims Administrator also compiled a list of multi-family dwelling addresses within zip codes 78359 (Gregory, TX) and 78374 (Portland, TX) that were added to the Property Database.

After de-duplicating the records and removing records associated with non-residential property, the Property Database contained 10,703 unique class entitled to receive notice. *See id.* at ¶ 6.

P&N mailed the Notice Packet[1] to the identified Class Members on December 13, 2021.[2] *See id.* at ¶ 7. The web address to the case website was also included in the Notice Packed and allowed Class Members access to additional information, including the Settlement Agreement and other relevant case filings. *See id.* at ¶ 11.

Of the 10,703 Notice Packets mailed, 1,614 were returned as undeliverable. *Id.* at ¶ 14. P&N performed skip trace searches using the LexisNexis third-party vendor database and was able to resend 413 Notice Packets to the Class Members. *Id.* For the remaining 1,201 Class Members for which no alternative mailing address were available, P&N mailed the Notice Packet to the last known address. A breakdown of the mailing statistics is included below. *Id.*

---

[1] The Notice Packet included the Short Form Notice, a Claim Form, Claim Form Instructions, and a pre-paid return envelope.

[2] Prior to the mailing, all mailing addresses were checked against the National Change of Address (NCOA) database maintained by the United States Postal Service ("USPS"). In addition, the addresses were certified via the Coding Accuracy Support System (CASS) to ensure the quality of the zip code and verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses.

| Table 1: Notice Program Dissemination Results | | |
|---|---|---|
| Description | Volume (#) | Percentage of Class Members (%) |
| Class Members | 10,703 | 100.0% |
| Mail Notice | | |
| Total Notices Packets Mailed | 10,703 | 100.0% |
| Total Notices Packets Returned as Undeliverable | 1,614 | 15.08% |
| | | |
| Mail Notice Re-Mailed | | |
| Total Notice Packets Re-Mailed | 1,614 | 15.08% |
| Notice Packets Re-Mailed per Skip Trace Hits | 413 | 3.86% |
| Notice Packets Re-Mailed to Last Known Address | 1,201 | 11.22% |

Exhibit 1, ¶ 14.

Recognizing the possibility that not all Class Members were included in the Property Database (such as individuals who formerly rented residential property within the Class Area), P&N also published the Short-Form Notice in the Corpus Christi Caller Times with a link to the settlement website. *See id.* at ¶ 9. The Short-Form Notice appeared in the December 13, 2021, December 27, 2021, January 10, 2022, and January 24, 2022 editions of the Corpus Christi Caller Times. *Id.* P&N's website, www.DustSettlement.com, was identified in all notice documents and provided access to additional documents identified on the "Court Documents" tab on the website.



See https://www.dustsettlement.com/court-documents/ (screenshot taken May 17, 2022). Tracking

the Notice, the website provided important dates, answers to frequently asked questions, instructions

for opting-out (requesting exclusion) of the settlement or objecting to the settlement. *See id.* at

https://www.dustsettlement.com/faqs/. The website (in addition to the mailed notice and newspaper

notice) provided contact information for the Claims Administrator.[3] *Id.* at

---

[3] P&N established a toll-free telephone number that was (and is) available twenty-four hours per day. The toll-free telephone number allows Class Members to call and interact with an interactive voice response ("IVR") system that provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. The toll-free number appeared in all Notices, as well as in multiple locations on the Settlement Website. As of May 9, 2022, P&N has received 490 calls to the toll-free number. P&N also established an email address to provide an additional option for Class Members to address

https://www.dustsettlement.com/contact-the-settlement-administrator/. As of May 9, 2022, the website received 10,785 page views from 3,791 unique visitors.

## B.     Class Member Response to Notice of Class Action Settlement

The 60-Day Notice Period ("Notice Period") ran from December 13, 2021 to February 11, 2022. *See* Exhibit 1 ¶ 7. During that time, 1,653 individuals returned their Claim Form to become Participating Settlement Class Members and receive their Individual Settlement Sums. Those individuals are broken into their respective zones in the below table.

| Table 1: Claim Submissions | | |
|---|---|---|
| Zone | Claims (#) | Properties (#) |
| 1 | 366 | 310 |
| 2 | 179 | 168 |
| 3 | 223 | 204 |
| 4 | 441 | 389 |
| 5 | 49 | 42 |
| 6 | 132 | 121 |
| 7 | 220 | 200 |
| Out of Zone | 43 | 43 |
| Total | 1,653 | 1,477 |

*See* Declaration of Special Master Dan Balhoff, attached as Exhibit 2, at p. 2. Approximately 15% of the identified Class Members returned a Claim Form to become a Participating Settlement Class Member. *See* Exhibit 1, ¶ 18. Thirty (30) Class Members (or 2.9% of the identified Class) exercised their right to opt-out of the Settlement and relinquish their titles as Class Members. *See id.* at ¶ 19. The

specific questions and requests to the Claims Administrator for support. As of May 9, 2022, P&N received 255 emails.

names of those individuals are identified Declaration of the Claims Administrator. *See id.* at Ex. L. No

Class Member objected to the terms of the Settlement Agreement. *Id.* at ¶ 20.

## C.    Settlement Distribution

The Total Settlement Value is $88,413,036.00 and includes both a monetary benefit (Total

Cash Settlement Amount)[4] and a non-monetary benefit (Remedial Measure Value)[5] to the Class

Members. Special Master Dan Balhoff provided the following accounting for the monetary portion

of the settlement benefit.

| Table 3: Net Settlement Fund | |
| --- | --- |
| **Category** | **Amount** |
| **Total Settlement Fund** | **$ 16,825,000.00** |
| (-) Class Counsel Attorneys' Fees | $   6,730,000.00 |
| (-) Litigation Costs | $      766,377.60 |
| (-) Class Rep Incentive Awards | $          7,000.00 |
| (-) Estimated Special Master Fee[1] | $      100,000.00 |
| (=) Net Settlement Fund | $   9,221,622.40 |
| (-) Extraordinary Circumstances | $   1,231,500.00 |
| (-) 5% Reserve for Dispute Resolutions | $      461,900.00 |
| (=) Pro-Rata Distribution Amount | $   7,528,041.28 |

*See* Exhibit 2, p. 4.

---

[4] The Total Cash Settlement Amount is $16,825,000.00.

[5] The Remedial Measure Value includes "those past, present, and future improvements, modifications, and procedures that Defendants have taken, are taking, and/or will continue to take to minimize, mitigate or eliminate the migration of Dust from the Facility offsite, including to the Class Area" through December 31, 2023. *Id.* at p. 16.

Each member of the Rule 23 Settlement Class, except for those identified as having "exceptional circumstances"[6] to warrant a different result, will receive their *pro rata* share of the net settlement fund based on their weighted Residential Unit Value. In determining the weights to apply, the Special Master considered the following criteria, pursuant to Section 4.2 of the Agreement.

1. The zone in which the Residence is located relative to the location of the Facility.

2. The nature of the Residence (i.e., whether it is a single-family or multi-family dwelling).

3. The status of the Resident (e.g., whether owner or tenant).

4. The number of Residents who have resided in each Residence over the entire Class Period and submitted a claim. and

5. The duration and time period of residence for each Resident during the Class Period.

*Id.* p. 2. Based upon the above factors and the discretion provided to the Special Master by the Settlement Agreement, he established a settlement award methodology that allocates the Net Settlement Amount between the Participating Class Members. Table 2 summarizes the relative weights assigned to items 1, 2 and 3 above. Items 4 and 5 were factored into the pro-rata calculations in circumstances where multiple claims were filed per Residential Unit. *See id.*

---

[6] Upon review, the Special Master determined some Class Members have presented extraordinary circumstances he deemed worthy of specific award amounts, pursuant to his discretion. These amounts are in lieu of their calculated award.

| Table 2: Weights | | | |
|---|---|---|---|
| **Zone** | **Relative Weight** | **Property Type** | |
| 1 | 250 | **Factor** | **Relative Weight** |
| 2 | 150 | Multi-family Dwelling | 75 |
| 3 | 125 | Single Family Home | 100 |
| 4 | 100 | **Claimant Type** | |
| 5 | 75 | **Factor** | **Relative Weight** |
| 6 | 50 | Owner | 100 |
| 7 | 25 | Tenant | 100 |

*See id.* at p.3. Using the above criteria, the Special Master calculated the Individual Settlement Sums as found in the Settlement Distribution Plan, filed contemporaneously under seal as Exhibit 3.

The Individual Settlement Sums for the Participating Class Members were calculated in accordance with the provisions of the Settlement Agreement. Further, pursuant to the terms of the Settlement Agreement, the Special Master has held a reserve of 5% of the Net Settlement Amount to allow for the resolution of any disputes or other special circumstances. *Id.* at p. 3. Any reserve funds remaining after resolution of disputes will be distributed to the benefit of the Participating Class Members according to the terms of the Settlement Agreement, either through a second distribution to the Participating Class Members, through the funding projects related to dust mitigation, or for community projects. *See id.* The distribution of any reserve funds remaining 210 days after the Settlement Checks are issued will be left to the sole discretion of the Special Master, according to the provisions of the Agreement. *See* ECF No. 84-1, § 4.3.

**D.    Service Awards**

Class Counsel recommend a service award of $1,000.00 for each Representative Plaintiff, for a total service award amount of $7,000.00. This amount is .008% of the Total Settlement Value, and only .04% of the Total Cash Amount. This amount compensates the representative plaintiffs for their willingness to affix their names to the lawsuit and embrace a more active role in both the litigation and settlement processes. The proposed Service Awards to Representative Plaintiffs are intended to recognize their initiative, their assistance in prosecuting the case, and their participation in settling the case. The propriety of the requested Service Awards will be addressed in greater detail, *infra*.

**E.      Attorneys' Fees**

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel will file a motion for an award of attorneys' fees and litigation expenses. By that motion, Class Counsel will request an award of $6,730,000.00, less than 8% of the Total Settlement Value. The motion for fees and expenses is filed contemporaneously with this Motion.

**III.**

**LEGAL ANALYSIS SUPPORTING FINAL APPROVAL**

Federal Rule of Civil Procedure 23(e) establishes the requirements for settlement of a class action. After preliminary approval and the issuance of a Court-approved settlement notice, courts can approve a proposed class action settlement after a "fairness hearing" and upon finding that the settlement is fair, reasonable, and adequate. FED. R. CIV. PROC. 23(e)(2) .

**A.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

The Fifth Circuit has identified six factors that a court should consider when determining whether a proposed settlement is fair, reasonable, and adequate:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Courts have broad discretion when assessing these factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). In the end, the Court's determinations are no more than "an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *City of Detroit v. Grinnell*, 495 F.2d 448, 468 (2d Cir. 1974)).

### 1.    Whether the Settlement Was a Product of Fraud or Collusion

The Settlement Agreement between the Parties was not a product of fraud or collusion— instead is was the result of over a year of arms-length negotiations with the aid of a well-respected mediator which ultimately resulted in a settlement. These extensive settlement negotiations were conducted fairly with the assistance of John W. Perry, Jr., a nationally-renowned mediator, and only after engaging in extensive discovery and motion practice. *C.f., Mangone v. First USA Bank*, 206 F.R.D.

222, 226 (S.D. Ill. 2001) (recognizing that arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement); *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Indeed, the Parties worked with Mr. Perry, both together and separately, for over a year before participating in multi-day formal mediation. Moreover, both Parties' counsel support the Agreement as fair and reasonable, and all certify that it was reached at arm's length.

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Turner v. Murphy Oil USA,* 472 F. Supp. 2d 830, 844 (E.D. La. 2007). Indeed, courts often note that a proposed settlement reached through arms-length negotiations is entitled to a judicial presumption of fairness. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) ("[T]here is a strong presumption in favor of finding the settlement fair, adequate and reasonable.") (collecting cases); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010), as modified (June 14, 2010), judgment entered (June 18, 2010), enforcement denied, No. 7:03-CV-102-D, 2011 WL 2413318 (N.D. Tex. June 15, 2011) ("[C]ourts are to adhere to a strong presumption that an arms-

length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval.").

This Court monitored the lengthy negotiation process and was fully informed of the developments leading up to the achievement of settlement in the consolidated cases. Here, there is no evidence of collusion between the Parties. Instead, the history of the litigation establishes otherwise as the consolidated cases were extensively litigated. Further, the compromise reached by the Parties substantially benefits the Class Members.

This factor accordingly weighs in favor of approval of the Settlement Agreement.

### 2. The Complexity, Expense, and Likely Duration of the Litigation

The complexity of this case, likelihood of delay, and the likelihood of *further* significant costs weigh in favor of approval of the Settlement Agreement. The Settlement Agreement resolves three consolidated actions filed by San Patricio County residents against Defendants. On May 22, 2017— over five (5) years ago—Blake Chapman filed the first of the consolidated lawsuits against Defendants. *See* ECF No. 1.  In January 2019, Class Counsel filed both the *Abben* and *Thurmond* cases. *See Abben, et al. v. voestalpine Texas Holdings, LLC*, No. 2:19-cv-00032, ECF No. 1 (S.D. Tex. Jan. 29, 2019); *Thurmond, et al. v. voestalpine Texas Holdings, LLC*, No. 2:19-cv-00034, ECF No. 1 (S.D. Tex. Jan. 30, 2019). These lawsuits were consolidated under this cause number for settlement purposes only. *See* ECF No. 79.

Substantial work remains in all three cases should the Court decline to finally approve the Settlement Agreement. Not only will issues pertinent to class action certification need to be finally determined in the *Thurmond* matter, over two hundred individuals have separately filed suit for damages against Defendants in the *Chapman* and *Abben* matters, and *Abben* also seeks class relief as a Rule 23(b)(2) injunctive class. While the Settlement Agreement resolves all claims for Plaintiffs and Class Members alike, absent settlement approval the Parties will be forced to further delve into multiple class certification disputes (and subsequent appeals) and further discovery for the individuals with claims currently on file.

The resolution of these issues will require dozens—if not hundreds—of motions across the three cases, which will prolong the time before any Class Member might obtain relief (if they are entitled to any relief at all). *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011) (recognizing that likely complexity, length, and expense of continuing litigation strongly supported approving the settlement given the complicated posture of the litigation) .. Given the potentially prohibitive costs of litigating individual claims, many Settlement Class Members may be deterred from seeking relief altogether. Absent settlement, it is reasonable to assume that this litigation will continue for years with no guarantee of eventual success for the Named Plaintiffs or the Class Members.

Moreover, courts recognize that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). "Such complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 147 (E.D. La. 2013) (noting that the time it would take to recover "would measure in years rather than the months contemplated by the parties at this stage."). The present case has *already* been on this Court's docket for over five years. Should the Settlement Agreement not be approved— it is certain that the litigation against Defendants will continue for years to come.

Here, as articulated above, the relative age of the claims, the procedural and evidentiary difficulty of defining liability and damages for individual claimants, and the possibly of zero recovery all provide ample justification for the negotiated resolution of this complex environmental dispute.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

In evaluating the fairness and reasonableness of a proposed settlement, courts consider "whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7–12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Completion of formal discovery is not necessary for the parties to be in a position to evaluate

accurately and sufficiently the fairness of a class settlement. *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ; *Turner*, 472 F. Supp. 2d at 847; *In re Educ. Testing*, 447 F. Supp. 2d at 621; *Kemp v. Unum Life Ins. Co. of Am.*, No. 14-0944, 2015 WL 8526689, at *5 (E.D. La. Dec. 11, 2015) ("Neither extensive formal discovery nor a voluminous record is required before settlement."). "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *Newby*, 394 F.3d at 306; *see also, e.g., In re Educ. Testing*, 447 F. Supp. 2d at 621 (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ).

The stage of the proceedings and the amount of discovery completed favor approval of the Settlement Agreement. The three actions, consolidated herein, have been on for a minimum of three years, and up to five years. During that time, the Parties have engaged in substantial briefing of contested legal issues and have completed significant discovery—including expert discovery. Over one hundred thousand documents have been produced and the Parties have taken a significant number of depositions, including the Rule 30(b)(6) deposition of Defendant voestalpine Texas, LLC.

Counsel for all Parties extensively investigated the applicable law and then applied it to the relevant facts, accounting for potential defenses. The Parties were able to assess and fully evaluate the propriety and benefit of the settlement of these claims. The discovery obtained ensured the Parties

had access to enough information to evaluate liability and damages and to reach a reasonable resolution of this matter. *See Ayers*, 358 F.3d at 369); *Cole*, 2018 WL 2766028, at *5 (recognizing that there must be enough information about the legal and factual theories at issue to effectively negotiate the settlement agreement). Even still, the Parties were able to agree on the Settlement Agreement only after participation in two multi-day, in-person mediations, and months of additional negotiations.

This factor likewise supports settlement approval.

### 4.    The Probability of Success on the Merits

A court evaluating a proposed settlement must also "compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172  (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  If further litigation is not likely to lead to greater relief for the class, this factor weighs in favor of settlement.  *Ayers*, 358 F.3d at 373).

A trial on the merits will involve risks for Plaintiffs as to both liability and damages. As discussed above, Plaintiffs face significant procedural and substantive challenges with respect to both the proposed class certification(s) and the merits of their claims. In addition to the claims for permanent  injunctive relief, Plaintiffs seek relief for their alleged trespass and nuisance claims. *See* ECF No. 82. Although generally favorable to Plaintiffs, Texas law is unclear on whether trespass is a viable claim in these circumstances. *C.f. Aruba Petroleum, Inc. v. Parr*, No. 05-14-01285-CV, 2017 WL 462340, at *2 (Tex. App. Feb. 1, 2017) . The law relating to Plaintiffs' private nuisance claims is likewise

unsettled regarding the damages available in the State of Texas. *See, e.g., Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016) . "Generally, when a nuisance is temporary, the landowner may recover only lost use and enjoyment that has already accrued. Conversely, if a nuisance is permanent, the owner may recover lost market value—a figure that reflects all losses from the injury, including lost rents expected in the future. *Id.* at 610 (internal quotations omitted).

While Plaintiffs plead their claims in the alternative, in the likely event a jury found Defendants' operations create permanent nuisance, Plaintiffs would be left trying to establish their "lost market value" as their measure of damages, which may prove difficult due to the rise of home values in the real estate market. *See id.* Moreover, the question of liability itself will require extensive fact discovery that will be both time-consuming and expensive and, as applied to the Class, would involve considerable time costing the Parties (additional) hundreds of thousands, if not millions, of dollars. In light of these obstacles, Plaintiffs' likelihood of success is far from certain.

Continued litigation of these cases is inherently risky given the *bona fide* dispute between the Parties, which will require the Parties to expend significant time and resources to litigate dispositive motions and prevail on the merits, and then prevail again on the inevitable appeals of arbitration, class certification, liability, and damages. The proposed Settlement Agreement alleviates these uncertainties and guarantees immediate relief and finality while still providing significant financial benefit to the Participating Settlement Class Members.

5. **The Range of Possible Recovery**

This factor involves consideration of "whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Turner,* 472 F. Supp. 2d at 849–50. Consideration of this factor further requires a healthy appreciation of the role of compromise in the parties' settlement efforts. *Cotton v. Hinton*, 559 F.2d at 1330 (5th Cir. 1977) ("[C]ompromise is the essence of a settlement"). "That the settlement amount represents something less than the total potential recovery does not, of course, warrant withholding approval. Indeed, '[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.'" *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88, 2019 WL 427331, at *11 (M.D. La. Feb. 4, 2019) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ).

Moreover, courts must balance the size of individual settlement awards with the benefit of avoiding further litigation by individual class members and obtaining immediate relief. *See, e.g., Ridgely v. F.E.M.A.*, No. 07-2146, 2010 WL 5140833, at *2 (E.D. La. Dec. 13, 2010) ; *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper

to take the bird in the hand instead of a prospective flock in the bush.'") (brackets in original) (quoting

*Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974) ).

It is Defendants position that the potential recovery available to the Class Members—*if* they were to overcome the numerous procedural and legal obstacles and succeed on the merits—is nominal, at best. Indeed, after significant expert discovery Plaintiffs recognize that *proving* Defendants' black dust caused them damages (either direct property damage or a diminution of market value), while not impossible, would be difficult. While Plaintiffs disagree that their potential recovery is nominal, they recognize that individual damage amounts they would be entitled to should they prevail at trial are not exorbitant. Pursuant to the Settlement Agreement, however, the Participating Settlement Class Members are set to receive a significant cash sum.

The precise amount each Participating Settlement Class Member will receive is included in the Special Master's Distribution Plan, and filed with this Court under seal. However, the Special Master set a minimum damage award of $500.00 for each Class Member who returned a claim form. This ensured that even individuals who have smaller claims (e.g., Class Members who only resided in the Class Area for a short time in the Class Period) received adequate compensation. In contrast, Participating Class Members with larger claims under the Settlement Agreement as applied by the Special Master's distribution method, are receiving amounts in excess of $10,000.00 and the average Individual Settlement Sum is in excess of $5,000.00, It is clear that the Participating Class Members

are receiving significant cash amounts at potentially the same level they would receive if they succeeded at trial. *Cf. Oppenlander,* 64 F.R.D. at 624.

6.    **The Opinions of Class Counsel, Class Representatives, and Absent Class Members Favor Settlement**

The opinion of Class Counsel, Class Representatives, and the absent class members favors settlement of this matter. Counsel are a court's primary source of information about the fairness, adequacy and reasonableness of a class settlement. *See Turner*, 472 F. Supp. 2d at 852. Therefore, courts look to the opinions of class counsel in evaluating the fairness of a proposed settlement. *See id.*; *see also Newby,* 394 F.3d at 309; *Cotton,* 559 F.2d at 1330 ("[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties."); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 12-1609, 2015 WL 965693, at *9 (W.D. La. Mar. 3, 2015) ).. Moreover, "[w]here 'counsel for both parties have significant experience in litigating and negotiating settlement of class actions,' this fact is strong evidence that the settlement is fair and reasonable." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 150 (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 287).

Counsel for the Parties endorse the Settlement Agreement before the Court and believe that it reflects the best result for the Class Members considering the substantial hurdles remaining in the litigation and the possibility that any judgment entered in the future may not be recoverable.[7] Each

---

[7] The Declaration of Austin Anderson is attached hereto as Exhibit 4 and the Declaration of Stuart White is attached hereto as Exhibit 5.

Class Member had the opportunity to submit a claim form to recover meaningful financial compensation without undue delay.

Likewise, Class Representatives have expressed pleasure with the Settlement Agreement and have voluntarily executed the same. *See* Exhibit 4, at ¶ 21. In evaluating the opinions of absent class members, it is recognized that those opinions can best be determined by looking at "both the number and nature of the objections to the settlement." *See Reed*, 703 F.2d at 174. Here, as of the date of the filing, no Class Member objected to the terms of this Settlement Agreement despite having been informed of the means and method by which to do so. Accordingly, the opinions of the absent class members also favor settlement of this matter. *See* Exhibit 1, ¶ 20.

## B.    THE REQUESTED SERVICE AWARDS ARE REASONABLE

Plaintiffs are seeking service awards totaling $7,000.00 for the Representative Plaintiffs—Blake Chapman, Ricky Stephens, Gary Thurmond Jr. and Carolyn Thurmond, Hortensia Martinez, Charles Garrett, and Roel Garcia. This total amount does not equal even one one-hundredth of a percent (.01%) of the Total Settlement Value, and represents less one tenth of a percent (.1%) of the Cash Settlement Amount.[8]   The requested service awards are reasonable and well within the amounts approved by other courts in the Fifth Circuit. *See King v. United SA Fed. Credit Union*, 5:09-cv-00937-

---

[8] The $7,000.00 service award is .0079% of the Total Settlement Value ($88,413,036.00) and is .04% of the Cash Settlement Amount ($16,825,000.00).

NSN, ECF No. 31 (W.D. Tex. Oct. 8, 2010) (awarding $15,000 to each of the two class representatives).

The amount of the requested payment is proportional to their time and effort expended in this matter and is therefore fair and reasonable. *In re Wells Fargo Wage and Hour Employment Prac. Lit.*, 18 F. Supp. 3d 844, 852 (S.D. Tex. May 12, 2014) (Miller, J.) ; *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts commonly permit payment to class representatives above the amounts received by class members generally). Indeed, "[w]hen determining [enhancement] awards, courts may consider a variety of factors, including risks to [plaintiffs] in commencing the suit, personal financial difficulty encountered by [plaintiffs], the amount of time and effort spent by [plaintiffs], and the personal benefit enjoyed by the representative as a result of the litigation." *Tarlecki v. Bebe Stores, Inc.*, 2009 WL 3720872, at *5 (N.D. Cal. Nov. 3, 2009) (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) ); *see also Silva v. Tegrity Pers. Servs.*, Civ. A. No. 4:13-cv-00860, 2013 (S.D. Tex. Dec. 5, 2013) (stating that the purpose of service awards is to compensate plaintiffs for specific expenses and sacrifices). The Representative Plaintiffs worked closely with Class Counsel, provided critical information to counsel in investigating the claims that made the basis of the lawsuit, provided critical information to counsel in preparation of pleadings, participated in developing factual material and litigation strategy, and communicated routinely with counsel regarding the case.

As the Supreme Court recently recognized, a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, ___ U.S. ___, ___, 138 S.Ct. 1800, 1811, n.7 (2018). "Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation." *Cook v. Flight Servs. & Sys., Inc.*, No. 2:16-CV-15759, 2019 WL 2462810, at *2 (E.D. La. June 13, 2019) ). Such compensation for time, effort, risk and service does not improperly grant preferential treatment to class representatives. *Claudet v. Cytec Ret. Plan,* No. CV 17-10027, 2020 WL 3128611, at *14 (E.D. La. June 12, 2020)  (recognizing that "[s]uch additional payments are justified in part by the fact that class representatives must be familiar with the case in order to be adequate representatives); *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *19 (W.D. Tex. May 23, 2016); Without the Named Plaintiffs' participation, this settlement would not have occurred.

## C.     CLASS CERTIFICATION IS APPROPRIATE

As detailed in Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 84), certification of a class action for settlement purposes is appropriate. *See* FED. R. CIV. P.  23(e) . Those arguments remain and Plaintiffs incorporate them herein.

## D.     THE CLASS NOTICE CONSTITUTED THE BEST NOTICE PRACTICABLE

"A settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted). "Notice is sufficient when it gives class members the information that is reasonably necessary for them to decide whether to object to a settlement." *Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028, at *3 (S.D. Tex. June 8, 2018), *appeal dismissed sub nom. Brannum v. Collier*, 745 F. App'x 544 (5th Cir. 2018) (citing *In re Katrina Canal Breaches Litig.*, 628 F.3d at 197) and *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("The settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.") (internal quotation marks omitted)).

This Court previously determined that the Settlement Notice issued to the Members of the Class subject to its October 28, 2022 order provided sufficient notice to meet the above standard. *See* ECF No. 86; *see also Cole,* 2018 WL 2766028, at *3. The Claims Administrator identified every home owner within the Class Area for the entirety of the Class Period. In addition to home owners, the Claims Administrator also identified every residential address (both single family and multi-family) within the Class Area. After de-duplicating the lists, P&N identified 10,703 discrete Class Members entitled to receive the Notice Packet based on either property ownership or current residence. For those Class Members who did not own property (and therefore appear in the property records) or

currently reside at the address in the Class Area, P&N posted the Short-Form of the Notice in the Corpus Christi Caller Times on four separate occasions—bi-weekly through the 60-day notice period and created a settlement website.

Therefore, Class Members received notice of the key terms of the proposed settlement through several different media. The Class Members were appraised of the pendency of this litigation; the elements of the Settlement Agreement benefitting the Class Members; that Class Counsel would be paid attorneys' fees and expenses out of the Settlement Fund, and subject to court approval, in connection with the Settlement Agreement, and that the Motion for Approval of the Settlement included a request for approval of such payment of fees and expenses; of the Class Members' opportunity to object and opt out of the Settlement Class; instructions for objecting or opting-out of the Settlement Class; the identity and contact information of Class Counsel; and of the date of the fairness hearing. *See* Exhibit No. 1 filed contemporaneously under seal.

As such, the Class Members have had a full opportunity to participate in the fairness hearing, including the opportunity for objectors to appear at the hearing, individually or through an attorney of their choosing, and to be heard on their objections. *See id.* As discussed in more detail above, thirty (30) Class Members exercised their right to opt-out of the settlement, and no Class Member filed an objection.[9] *See id* at ¶¶ 19–20. Accordingly, the Parties have established that adequate notice pursuant

---

[9] Thirty-nine individuals originally elected to opt-out of the settlement, however nine of those individuals withdrew their opt-out request and became Participating Class Members. *See* Exhibit 1 at ¶ 19.

to Federal Rule of Civil Procedure 23(e) has been provided. *See* FED. R. CIV. P. 23(e) ; *Cole*, 2018 WL 2766028, at *3.

**E.    CLASS ADMINISTRATION COSTS ARE REASONABLE**

**1.    Claims Administration Expenses**

Postlethwaite & Netterville, APAC was retained by Defendants as the Claims Administrator to administration services for this Settlement Agreement. *See* Exhibit 1.  In addition to disseminating the Court-approved Notice Packets, P&N was also tasked with first identifying the contact information for the Class Members to create the Property Identification Database used for the notice process.  P&N was responsible for preparing and mailing the Notice Packets to the identified Class Members, posting the Short-Form Notice bi-weekly in the Corpus Christi Caller Times for the duration of the 60-day notice period, and creating and managing a neutral and informative settlement website.

P&N was the main point of contact for Class Members during the notice period and utilized both a toll-free number and email address to communicate with the Class Members. P&N was also responsible for receiving the Claim Forms, and Claim Form documentation, from the Class Members. In instances were additional information was needed to complete the Claim Form, P&N would work with the Claim Member to ensure the Special Master received the appropriate documentation. After the expiration of the Notice Period, P&N also prepared a Claims Database, sorting each individual

Participating Settlement Class Member by Zone, and including all pertinent information the Special Master would need, including the time-period that each class member resided in the Class Area.

Should this Court finally approve the Settlement Agreement, P&N will also be responsible for creating and managing a Qualified Settlement Fund, receiving and distributing the Cash Settlement Amount, and performing all necessary tax reporting. Finally, P&N will be responsible for distributing the Reserve Fund. Depending on the amount remaining in the Reserve Fund and the determination of the Special Master pursuant to section 4.3 of the Agreement, P&N may be responsible for (1) processing a second distribution to the Participating Class Members, (2) ensuring funding of a Dust Mitigation project in the Class Area; and/or (3) some other community project selected by the Special Master that benefits the Class Members. *See* ECF No. 84-1, § 4.3.

2.      **Special Master Expenses**

The Parties agreed to retain Dan Balhoff of PERRY, BALHOFF, MENGIS & BURNS, LLC, as Special Master, subject to Court approval. In its Preliminary Approval Order, this Court approved the appointment of Mr. Balhoff to the Special Master roll. *See* ECF No. 86. As a Special Master, Mr. Balhoff was instrumental in assisting the Parties finalize the Settlement Agreement itself as he provided invaluable insight into the administrative process. Mr. Balhoff was also actively involved with P&N during the duration of the Notice Period and was responsible for addressing substantive concerns raised by the Class Members about the Settlement Agreement. Once the deadline for submitting Claim

Forms passed, Mr. Balhoff was responsible for reviewing the claims, setting the applicable weight for each class zone, and creating a process by which the Participating Class Members' claims would be evaluated and compensated.

Should the Settlement Agreement be finally approved, and once the Individual Settlement Sums are paid, Mr. Balholff will remain actively involved in the administration process and will be responsible for responding to concerns about the Individual Settlement Sums. Five percent of the Net Settlement has been held back to address Class Member complaints and/or accommodate late responding Class Members, at the Special Master's sole discretion. Approximately seven (7) months after the settlement checks are issued, and to the extent there remain any amount of money in the Reserve Fund, Mr. Balhoff will be responsible for deciding how to distribute any remaining portion of the Reserve Fund and overseeing that distribution.

Defendants agreed to separately fund an amount not to exceed $250,000.00 for the administration of the settlement. This amount is in *addition* to the Total Settlement Value and includes compensation for both P&N's and the Special Master's services. To date, P&N has incurred $180,991.00 in fees and costs. Although significant work remains, P&N estimates that it will not expend the entire $250,000.00 amount provided by Defendants for administration. Mr. Balhoff has charged $100,000.00 for his services as Special Master. Although the full $100,000.00 is currently deducted from the Cash Settlement Amount, it is likely that a portion of his expense will be paid by

the remaining balance of the $250,000.00, after P&N's billing is complete. However, out of an abundance of caution, Plaintiffs have deducted the full amount from the Gross Settlement Amount to ensure that there is not a lack of funds. To the extent some of the Special Master fees are covered by the $250,000.00 administration amount, any remaining excess would be included in the Reserve Fund for distribution pursuant to section 4.3 of the Settlement Agreement.

In sum, the Parties have secured extensive administration services from both a Claims Administrator and a Special Master for a cost to the Class that is less than $100,000.00. This expense is reasonable, the services performed were necessary, and it should be approved. *See In re Lease Oil Antitrust Litig. (No. II),* No. MDL 1206, 2007 WL 4377835, at *5 (S.D. Tex. Dec. 12, 2007) .

## IV.
## CONCLUSION

Final approval of the Agreement is appropriate because Plaintiffs have shown that the settlement is fair, reasonable, and adequate. Moreover, certification of a class action, for settlement purposes only, is also warranted. This case satisfies the prerequisites of Rule 23(a) and the criteria of Rule 23(b)(3). Plaintiffs accordingly ask the Court to finally approve the settlement agreement and grant all other proper relief as set forth in the Plaintiffs' Proposed Order.

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Defendants' counsel of record and they are not opposed to the filing of this Motion or the relief requested herein.

/s/ *Austin Anderson*
Austin Anderson

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Austin Anderson*
Austin Anderson

**Index of Exhibits**

1.    Declaration of Claims Administrator
2.    Special Master's Report and Distribution Plan
3.    Settlement Distribution Plan (filed under seal)
4.    Declaration of Austin Anderson
5.    Declaration of Stuart White